## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| LAURA LABRECQUE, individually and on behalf of all others similarly situated, | **CLASS ACTION** |
| *Plaintiff*, | **Case No. 22-00347** |
| v. | |
| NEURO REHAB ASSOCIATES, INC. D/B/A NORTHEAST REHABILITATION HOSPITAL NETWORK, | **JURY TRIAL DEMANDED** |
| *Defendant*. | |

## CLASS ACTION COMPLAINT

Plaintiff Laura LaBrecque ("Plaintiff"), individually and on behalf of a Class of similarly situated persons, brings this Class Action Complaint and alleges the following against defendant Neuro Rehab Associates, Inc. d/b/a Northeast Rehabilitation Hospital Network ("Defendant"), based upon personal knowledge with respect to Plaintiff and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters.

## INTRODUCTION

1.     Plaintiff brings this class action against Defendant for Defendant's failure to properly secure and safeguard protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act ("HIPAA"), and other personally identifiable information ("PII"). The PII included without limitation: names; dates of birth; driver's license numbers; Social Security numbers; and credit and debit card numbers, along with their associated security codes, access codes, passwords, or PINs. The PHI included without

limitation: medical billing information; provider's names; medical record numbers; health insurance information; and treatment information.

2.      Defendant failed to comply with industry standards to protect information systems that contain that PII and PHI, and failed to provide timely, accurate, and adequate notice to Plaintiff and other Class Members that their PII and PHI had been compromised. Plaintiff seeks, among other things, orders requiring Defendant to fully and accurately disclose the nature of the information that has been compromised and to adopt reasonably sufficient security practices and safeguards to prevent incidents like the disclosure (the "Data Breach") in the future.

3.      In November 2021, Defendant reported to the U.S. Department of Health and Human Services Office for Civil Rights of a data breach affecting 501 individuals. On August 24, 2022, Defendant reported to the Office of the Maine Attorney General that the incident in fact affected over 190,000 individuals, and that "[t]he information that could have been subject to unauthorized access includes name, address, date of birth, driver's license, Social Security number, and financial account information." Ex. 1.

4.      Plaintiff received a form notice letter from Defendant on September 1, 2022. That letter reflected that her compromised information in fact included her "name, date of birth, medical billing information, provider's name, medical record number, health insurance information, and treatment information." Ex. 2.

5.      That letter further disclosed that Defendant initially "became aware of suspicious activity related to its systems" nearly one year ago, on September 30, 2021. Defendant did not identify the individuals with PII and PHI at risk until August 3, 2022, and apparently did not contact any of those individuals in the interim. As a result of Defendant's failure to implement and follow industry standard security procedures, Plaintiff's and Class Members' PII and PHI is

in the hands of criminals. Plaintiff and Class Members will forever face a substantially increased risk of identity theft. Consequently, Plaintiff and Class Members have had to spend, and will continue to spend, time and money in the future to protect themselves due to Defendant's failures.

6.     Additionally, because of Defendant's failure to follow federally prescribed, industry standard security procedures, the services Plaintiff and Class Members purchased were worth less than what Defendant was obligated to provide them. Defendant expressly and repeatedly represented that they would maintain the confidentiality of Plaintiff's PII and PHI it obtained throughout the course of Plaintiff's treatment.

7.     Plaintiff seeks to remedy these harms individually and on behalf of all other similarly situated individuals whose PII and/or PHI were stolen in the Data Breach. Plaintiff seeks remedies including reimbursement of out-of-pocket losses, compensation for time spent responding to the Data Breach and other types of harm, free credit monitoring and identity theft insurance, and injunctive relief involving substantial improvements to Defendant's data security systems.

## **PARTIES**

8.     Plaintiff Laura LaBrecque resides in Lowell, Massachusetts. In September of 2022, Ms. LaBrecque received a letter from Defendant informing her that her PII and PHI was at risk. Ms. LaBrecque was a patient of Defendant, whose PII and PHI Defendant disclosed without authorization to an unknown third party because of the Data Breach.

9.     Defendant Neuro Rehab Associates, Inc. d/b/a Northeast Rehabilitation Hospital Network is a New Hampshire corporation, with its principal office in Salem, New Hampshire.

10.     Defendant cares for patients through a network of over 25 hospitals and physical therapy facilities in New Hampshire and Massachusetts. Due to the nature of these services, Defendant acquires and electronically stores patient PII and PHI.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, there are more than 100 proposed Class Members, and minimal diversity exists as Defendant is a citizen of a state different from that of at least one Class Member.

12.     This Court has personal jurisdiction over Defendant because it is a resident of the State of New Hampshire.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this District. Venue is additionally proper because Defendant transacts business and may be found in this District.

## FACTUAL ALLEGATIONS

### The Data Breach

14.     Defendant operates four rehabilitation hospitals and over 20 outpatient centers, a home care division, a sports medicine division, and an outpatient pediatric division in New Hampshire and Massachusetts.[1] As a healthcare provider, Defendant is required to ensure that PII and PHI are not disclosed or disseminated to unauthorized third parties without its patients' express written consent.

---

[1] *See* https://www.northeastrehab.com/about-us/ (last accessed Sept. 2, 2022).

15.     On November 29, 2021, Defendant reported a hacking incident to the U.S. Department of Health and Human Services Office for Civil Rights that compromised the data of 501 individuals.

16.     On August 24, 2022, Defendant reported to the Office of the Maine Attorney General that the incident in fact affected 190,220 individuals, and that "[t]he information that could have been subject to unauthorized access includes name, address, date of birth, driver's license, Social Security number, and financial account information." That report also disclosed that Defendant had initially become "aware of suspicious activity related to its systems" on September 30, 2021, and ultimately determined that "an unauthorized individual gained access to certain … systems between September 30, 2021, and October 5, 2021." *See* Ex. 1.

17.     Absent any reference to any time period, Defendant claimed to have undertaken a "comprehensive and time-intensive review of all involved files to determine if they contained sensitive information." *Id.* Defendant did not complete that review until August 3, 2022, at which point it purportedly concluded that "[t]he information that could have been subject to unauthorized access includes name, address, date of birth, driver's license, Social Security number, and financial account information." *Id.* That report pointedly did not reference the disclosure of any patient PHI.

18.     But Defendant's letter disclosing that Plaintiff's data was accessed during the Data Breach reflects that it did in fact include PHI and, in particular, her "name, date of birth, medical billing information, provider's name, medical record number, health insurance information, and treatment information." Ex. 2.

19.     Defendant's inconsistent disclosures leave open the possibility that the Data Breach resulted in the disclosure of more PII and PHI than Defendant has represented.

20.     For that and other reasons, Defendant's disclosures are deficient. They do not include to provide basic details concerning the Data Breach, including, but not limited to, why Defendant required over ten months to even estimate the scope of the Data Breach, why PII and PHI were stored on systems without adequate security, the deficiencies in the security systems that permitted unauthorized access, whether the data was encrypted or otherwise protected, and whether Defendant know if the data has not been further disseminated.

21.     Moreover, Defendant has offered no protection to the patients victimized by its failure to protect their PII and PHI. Businesses and other institutions that are the subject of data breaches routinely, if not consistently, offer the individuals who have been victimized credit monitoring and/or identity protection free of charge. Defendant has not offered that service to Plaintiff and Class Members. Defendant merely warned those Class Members to "remain vigilant against incidents of identity theft and fraud, to monitor your accounts for any unusual activity, and to report any instances of theft or fraud to law enforcement." Ex. 1, at 4.

22.     Defendant has not nearly disclosed all the details of the Data Breach and its investigation. Without such disclosure, questions remain as to the full extent of the Data Breach, the actual data accessed and compromised, and what measures, if any, Defendant has taken to secure the PII and PHI still in its possession. Plaintiff seeks to determine the scope of the Data Breach and the information involved, obtain relief that redresses the harm to Plaintiff's and Class Members' interests, and ensure that Defendant has proper measures in place to prevent similar incidents from occurring in the future.

**Defendant's Privacy Policies**

23.     HIPAA requires that Defendant provide every patient it treats, including Plaintiff and Class Members, with a privacy notice. Defendant's Notice of Privacy Practices claims that

6

"[w]e are required by law to maintain the privacy and security of your protected health information."[2] The Policy adds that [w]e will let you know promptly if a breach occurs that may have compromised the privacy or security of your information", and that "[w]e will not use or share your information other than as described here unless you tell us we can in writing."[3]

24.    Defendant further claims to "[i]n addition to compliance with Federal HIPAA and other statutes noted above, [Defendant] will comply with Commonwealth of Massachusetts laws and New Hampshire State Laws respecting patient privacy and confidentiality."[4] Those laws include Mass. Gen. Laws Ann. ch. 111, § 70E(b), which provides that all patients have a right "to confidentiality of all records and communications to the extent provided by law."

25.    Those laws also include N.H. Rev. Stat. Ann. § 332-I:2, which provides that a "health care provider shall not reveal confidential communications or information without the consent of the patient, unless provided for by law or by the need to protect the welfare of the individual or the public interest."

26.    In addition, N.H. Rev. Stat. Ann. § 332-I:3 provides that "[o]nly a health care provider, for purposes of treatment, care coordination, or quality assurance, or a patient or a patient's legal representative with respect to the patient's protected health information, may have access to protected health information transmitted through the health information organization." That statute further provides that "[t]he health information organization shall adhere to the protected health information requirements for health care providers in state and federal law," and

---

[2] *See* https://www.northeastrehab.com/wp-content/uploads/2016/12/Notice-of-Privacy-Practices-English.pdf (last accessed Sept. 2, 2022).

[3] *Id.*

[4] *Id.*

that "[t]he health information organization shall follow all current and future laws relative to medical information privacy and all existing laws regarding health information exchanges."

27.     Defendant's "hospital-wide policy" regarding the "Confidentiality of Patient Information" and "Access to Patient Health Information" provides that "[i]t is the policy of Northeast Rehabilitation Hospital Network (NRHN) to protect and respect patient confidentiality and privacy of protected health information as mandated by Federal HIPAA rules and regulations, NH State Law and Medicare's Conditions of Participation. NH RSA 151.21 and CFR 164.508-165.514."[5] The purported purpose of that policy is "[t]o establish … security from unauthorized access." The policy notes that "[p]atient information includes …electronic patient information databases, stored electronically."[6]

28.     Defendant's "Standards of Ethical Conduct" provide that "[a]ll patients have the right to safe care, quality services, transparency, and privacy as outlined in the Patient Bill of Rights."[7] However, the link to the Patient Bill of Rights on Defendant's website is no longer functional.[8] A version of the Patient Bill of Rights that was posted on Defendant's website as of late 2020 provides that "[t]he patient shall be ensured confidential treatment of all information contained in his/her personal and clinical record, including that stored in an automatic data bank, and his/her written consent shall be required or the release of information to anyone not

---

[5] *See* https://www.northeastrehab.com/policies/Confidentiality-of-Patient-Information-Access-to-Patient-Health-Information.pdf (last accessed Sept. 2, 2022).

[6] *Id.*

[7] *See* https://www.northeastrehab.com/policies/Code-of-Conduct.pdf (last accessed Sept. 2, 2022).

[8] *See* https://www.northeastrehab.com/health-info-managment/ (last accessed Sept. 2, 2022).

otherwise authorized by law to receive it. Medical information contained in the medical records at the facility licensed under this chapter shall be deemed to be the property of the patient."[9]

29.    The Patient Bill of Rights further provides that, with respect to Defendant's home care services, "[t]he patient has the right to be ensured of confidential treatment of all information contained in the patient's personal and clinical record, including the requirement of the patient's written consent to release such information to anyone not otherwise authorized by law to receive it," and that "[p]atient information is not released without patient consent. Records containing sensitive information (i.e., psych, alcohol or HIV history) will be released only with patient informed consent."[10]

30.    Defendant created these policies, representations, and requirements, and publicly advertised them on its website as a means of increasing the value of its relationships with patients, thus allowing it to charge them higher rates than it should in fact have charged in light of its inadequate security and information security practices.

### The Healthcare Sector is a Primary Target for Data Breaches

31.    Defendant was on notice that companies in the healthcare industry are susceptible targets for data breaches.

32.    Defendant was also on notice that the Federal Bureau of Investigation has been concerned about data security in the healthcare industry. On April 8, 2014, the FBI's Cyber Division issued a Private Industry Notification to companies within the healthcare sector, stating that "the health care industry is not technically prepared to combat against cyber criminals' basic cyber intrusion tactics, techniques and procedures (TTPs), much less against more advanced

---

[9] *See* https://web.archive.org/web/20200927160341/https://www.northeastrehab.com/wp-content/uploads/2016/12/Patient-Bill-of-Rights-2016.pdf (last accessed Sept. 2, 2022).

[10] *Id.* at 3.

persistent threats (APTs)" and pointed out that "[t]he biggest vulnerability was the perception of IT healthcare professionals' beliefs that their current perimeter defenses and compliance strategies were working when clearly the data states otherwise." The same warning specifically noted that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining Protected Health Information (PHI) and/or PII."[11]

33.    The number of reported North American data breaches increased by over 50 percent in 2021, from 1,080 in 2020[12], to 1,638 in 2021.[13] As a recent report reflects, "[h]ealthcare has increasingly become a target of run-of-the-mill hacking attacks and the more impactful ransomware campaigns."[14]

34.    At the end of 2018, the healthcare sector ranked second in the number of data breaches among measured sectors, and had the highest rate of exposure for each breach.[15] Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident . . . came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore

---

[11] (U) Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain (Apr. 8, 2014), FBI Cyber Division Private Industry Notification, https://info.publicintelligence.net/FBI-HealthCareCyberIntrusions.pdf (last accessed Sept. 2, 2022).

[12] *See* Verizon 2021 Data Breach Investigations Report, at 97, https://www.verizon.com/business/resources/reports/2021-data-breach-investigations-report.pdf (last accessed Sept. 2, 2022).

[13] *See* Verizon 2022 Data Breach Investigations Report, at 83, https://www.verizon.com/business/resources/reports/2022/dbir/2022-data-breach-investigations-report-dbir.pdf (last accessed Sept. 2, 2022).

[14] *Id.* at 62.

[15] *2018 End-of-Year Data Breach Report*, Identity Theft Resource Center, https://www.idtheftcenter.org/2018-data-breaches (last visited Sept. 2, 2022).

coverage.[16] Almost 50 percent of the victims lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy.[17]

35.     Healthcare related breaches have persisted because criminals see electronic patient data as a valuable asset. According to the 2019 HIMSS Cybersecurity Survey, 82 percent of participating hospital information security leaders reported having a significant security incident in the last 12 months, with a majority of these known incidents being caused by "bad actors" such as cybercriminals.[18] "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[19]

36.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security

---

[16] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), *available at:* https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/ (last accessed Sept. 2, 2022).

[17] *Id.*

[18] *2019 HIMSS Cybersecurity Survey,* https://www.himss.org/sites/hde/files/d7/ u132196/2019_HIMSS_Cybersecurity_Survey_Final_Report.pdf (last accessed Sept. 2, 2022).

[19] Inside Digital Health, *How to Safeguard Hospital Data from Email Spoofing Attacks*, Apr. 4, 2019, https://www.idigitalhealth.com/news/how-to-safeguard-hospital-data-from-email-spoofing-attacks (last accessed Sept. 2, 2022).

of patients' health and financial information, but also patient access to care.[20]

37.     As a major healthcare provider, Defendant knew, or should have known, the importance of safeguarding the patients' PII and PHI entrusted to it and of the foreseeable consequences if that data was disclosed. This includes the significant costs that would be imposed on Defendant's patients because of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach.

### Defendant Stores Plaintiff's and Class Members' PII and PHI

38.     Defendant obtains and stores a massive amount of its patients' PII and PHI. As a condition of engaging in health services, Defendant requires that patients entrust it with highly confidential PII and PHI.

39.     By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class Members' PII and PHI, Defendant assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII and PHI from disclosure.

40.     Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII and PHI and, as current and former patients, they rely on Defendant to keep this information confidential and securely maintained, and to make only authorized disclosures of this information.

---

[20] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med. Ass'n (Oct. 4, 2019), https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals (last visited Sept. 2, 2022).

**PII and PHI are Valuable and Subject to Unauthorized Disclosure**

41.    Defendant was aware that the PII and PHI it collects is highly sensitive and of significant value to those who would use it for wrongful purposes.

42.    PII and PHI are valuable commodities to identity thieves. As the FTC recognizes, identity thieves can use this information to commit an array of crimes including identify theft, and medical and financial fraud.[21] Indeed, a robust illegal market exists in which criminals openly post stolen PII and PHI on multiple underground websites, commonly referred to as the "dark web." PHI can sell for as much as $363 on the dark web, according to the Infosec Institute.[22]

43.    PHI is particularly valuable because criminals can use it to target victims with frauds and swindles that take advantage of the victim's medical conditions or victim settlements. It can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

44.    Medical identify theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's PHI is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial

---

[21] Federal Trade Commission, *What To Know About Identity Theft,* https://consumer.ftc.gov/articles/what-know-about-identity-theft (last accessed Sept. 2, 2022).

[22] Center for Internet Security, *Data Breaches: In the Healthcare Sector,* https://www.cisecurity.org/blog/data-breaches-in-the-healthcare-sector/ (last accessed Sept. 2, 2022).

repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[23]

45.    The ramifications of Defendant's failure to keep its patients' PII and PHI secure are long lasting and severe. Once PII and PHI is stolen, fraudulent use of that information and damage to victims may continue for years. Fraudulent activity might not show up for months or even years thereafter.

46.    Further, criminals often trade stolen PII and PHI for years following a breach. Cybercriminals can post stolen PII and PHI on the internet, thereby making such information publicly available.

47.    Approximately 21% of victims do not realize their identify has been compromised until more than two years after it has happened. [24] This gives thieves ample time to seek multiple treatments under the victim's name. Forty percent of consumers found out they were a victim of medical identity theft only when they received collection letters from creditors for expenses that were incurred in their names.[25]

48.    Here, not only was PHI compromised, but also patient Social Security numbers. The Social Security Administration has warned that identity thieves can use an individual's Social Security number to apply for additional credit lines. Such fraud may go undetected until

---

[23] Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/ (last accessed Sept. 2, 2022).

[24] *See* Medical ID Theft Checklist, https://www.identityforce.com/blog/medical-id-theft-checklist-2 (last accessed Sept. 2, 2022).

[25] Experian, *The Potential Damages and Consequences of Medical Identityy Theft and Healthcare Data Breaches ("Potential Damages")*, https://www.experian.com/assets/data-breach/white-papers/consequences-medical-id-theft-healthcare.pdf (last accessed Sept. 2, 2022).

debt collection calls commence months, or even years, later.[26] This time lag between when harm occurs and when it is discovered, and also between when PII is stolen and when it is used, compounds an identity theft victim's ability to detect and address the harm.

49.    Stolen Social Security numbers also make it possible for thieves to file fraudulent tax returns, file for unemployment benefits, or apply for a job using a false identity. Each of these fraudulent activities is difficult to detect. An individual may not know that his or her Social Security number was used to file for unemployment benefits until law enforcement notifies the individual's employer of the suspected fraud. Fraudulent tax returns are typically discovered only when an individual's authentic tax return is rejected.

50.    Changing or cancelling a stolen Social Security number is extremely difficult. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security Number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

51.    Even then, a new Social Security number may not be effective. According to the Identity Theft Resource Center, "The credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[27]

52.    Defendant knew, or should have known, the importance of safeguarding its patients' PII and PHI entrusted to it and of the foreseeable consequences if its data security

---

[26] *Identity Theft and Your Social Security Number*, Social Security Administration, http://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Sept. 2, 2022).

[27] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millions-worrying-about-identity-theft (last visited Sept. 2, 2022).

systems were breached. This includes the significant costs that would be imposed on Defendant's patients because of a breach. Defendant failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

### The Data Breach Exposed Plaintiff and Class Members to Identity Theft and Out-of-Pocket Losses

53.     Plaintiff and Class Members now face years of constant surveillance of their financial and personal records, monitoring, and loss of their rights. They are incurring and will continue to incur such damages in addition to any fraudulent use of their PII and PHI.

54.     Despite all the publicly available knowledge of the disclosure of PII and PHI, Defendant's policies and practices with respect to maintaining the security of its patients' PII and PHI were reckless, or at the very least, negligent.

55.     In virtually all contexts, the expenditure of time has consistently been recognized as compensable, and for many people, it is the basis on which they are compensated. Plaintiff and Class Members should be compensated for the time they have expended because of Defendant's misfeasance.

56.     Once PII and PHI are stolen, fraudulent use of that information and damage to victims may continue for years. Consumer victims of data breaches are more likely to become victims of identity fraud.[28]

57.     Defendant's delay in identifying and reporting the Data Breach caused additional harm to Plaintiff and Class Members. Although Defendant improperly exposed her PHI as early as September 30, 2021, Plaintiff was not notified of the Data Breach until September 1, 2022,

---

[28]     *2014 LexisNexis True Cost of Fraud Study, available at:* https://www.lexisnexis.com/risk/downloads/assets/true-cost-fraud-2014.pdf (last accessed Sept. 2, 2022).

depriving her of the ability to promptly mitigate potential adverse consequences resulting from the Data Breach.

58.    As a result of the wide variety of injuries that can be traced to the Data Breach, Plaintiff and Class Members have and will continue to suffer financial loss and other actual harm for which they are entitled to damages, including, but not limited to, the following:

a.    losing the inherent value of their PII and PHI;

b.    identity theft and fraud resulting from the theft of their PII and PHI;

c.    costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.    costs associated with purchasing credit monitoring, credit freezes, and identity theft protection services;

e.    unauthorized charges and loss of use of and access to their financial account funds and costs associated with inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit;

f.    lowered credit scores resulting from credit inquiries following fraudulent activities;

g.    costs associated with time spent and the loss of productivity or the enjoyment of one's life from taking time to address and attempt to mitigate and address the actual and future consequences of the Data Breach, including discovering fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, imposing withdrawal and purchase limits on

17

compromised accounts, and the stress, nuisance and annoyance of dealing with the repercussions of the Data Breach; and

h.    the continued imminent injury flowing from potential fraud and identify theft posed by their PII and PHI being in the possession of one or more unauthorized third parties.

**Defendant's Lax Security Violates HIPAA**

59.    Defendant had a non-delegable duty to ensure that all PHI it collected and stored was secure.

60.    Defendant is bound by HIPAA (*see* 45 C.F.R. § 160.102) and as such is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule ("Security Standards for the Protection of Electronic Protected Health Information"), 45 C.F.R. Part 160 and Part 164, Subparts A and C.

61.    These rules establish national standards for the protection of patient information, including protected health information, defined as "individually identifiable health information" which either "identifies the individual" or where there is a "reasonable basis to believe the information can be used to identify the individual," that is held or transmitted by a healthcare provider. See 45 C.F.R. § 160.103.

62.    HIPAA limits the permissible uses of "protected health information" and prohibits unauthorized disclosures of "protected health information."

63.    HIPAA requires that Defendant implement appropriate safeguards for this information.

64.     Despite these requirements, Defendant failed to comply with its duties under HIPAA and its own Privacy Practices. In particular, Defendant failed to:

   a.   maintain an adequate data security system to reduce the risk of data breaches and cyber-attacks;

   b.   adequately protect Plaintiff's and Class Members' PHI;

   c.   ensure the confidentiality and integrity of electronic PHI created, received, maintained, or transmitted, in violation of 45 C.F.R. § 164.306(a)(1);

   d.   implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 C.F.R. § 164.312(a)(1);

   e.   implement adequate policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 C.F.R. § 164.308(a)(1)(i);

   f.   implement adequate procedures to review records of information system activity regularly, such as audit logs, access reports, and security incident tracking reports, in violation of 45 C.F.R. § 164.308(a)(1)(ii)(D);

   g.   protect against reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 C.F.R. § 164.306(a)(3);

   h.   ensure compliance with the electronic PHI security standard rules by its workforce, in violation of 45 C.F.R. § 164.306(a)(4); and/or

   i.   train all members of its workforce effectively on the policies and procedures with respect to PHI as necessary and appropriate for the members of its workforce to

carry out their responsibilities and to maintain security of PHI, in violation of 45

C.F.R. § 164.530(b)

65.     Defendant failed to comply with its duties under HIPAA despite being aware of

the risks associated with unauthorized access to Plaintiff's and Class Members' PHI.

**Defendant Violated FTC Guidelines**

66.     The Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, prohibited

Defendant from engaging in "unfair or deceptive acts or practices in or affecting commerce."

The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain

reasonable and appropriate data security for consumers' PII is an "unfair practice" in violation of

the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

67.     The FTC has promulgated several guides for businesses that reflect the

importance of implementing reasonable data security practices. According to the FTC, the need

for data security should be factored into all business decision-making.[29]

68.     In 2016, the FTC updated its publication, *Protecting Personal Information: A

Guide for Business*, which established data security guidelines for businesses.[30] The guidelines

reflect that businesses should protect the PII that they keep; properly dispose of PII that is no

longer needed; encrypt information stored on computer networks; understand their network's

vulnerabilities; and implement policies to correct any security problems.

---

[29] Federal Trade Commission, *Start With Security: A Guide for Business*,
https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last
accessed Sept. 2, 2022).

[30] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*,
*available at*: https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-
personal-information.pdf (last accessed Sept. 2, 2022).

69.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to confidential data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[31]

70.     The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

71.     Defendant failed to properly implement basic data security practices. Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to patients' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

72.     Defendant was at all times fully aware of its obligation to protect the PII and PHI of patients because of its position as a major healthcare provider. Defendant was also aware of the significant repercussions that would result from its failure to do so.

## CLASS ACTION ALLEGATIONS

73.     Pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Plaintiff seeks certification of a Nationwide Class and Massachusetts Subclass as defined below:

---

[31]     FTC, *Start With Security*, *supra*.

Nationwide Class: All persons in the United States whose PII and/or PHI was exposed by the Data Breach that was disclosed by Defendant on August 24, 2022.

Massachusetts Subclass: All Massachusetts residents whose PII and/or PHI was exposed by the Data Breach that was disclosed by Defendant on August 24, 2022.

74.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns. Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff.

75.     Plaintiff reserves the right to modify or amend the definition of the proposed Class as additional information becomes available to Plaintiff.

76.     **Numerosity:** The Class Members are so numerous that individual joinder of all Class Members is impracticable. In its report to the Maine Attorney General, Defendant attested that the Data Breach affected at least 190,000 patients. Those individuals' names and addresses are available from Defendant's records, and Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods.

77.     **Commonality:** There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a.  Whether and to what extent Defendant had a duty to protect the PII and PHI of Class Members;

    b.  Whether Defendant was negligent in collecting and storing Plaintiff's and Class Members' PII and PHI;

    c.  Whether Defendant had duties not to disclose the PII and PHI of Class Members to unauthorized third parties;

    d.   Whether Defendant took reasonable steps and measures to safeguard Plaintiff's and Class Members' PII and PHI;

    e.   Whether Defendant failed to adequately safeguard the PII and PHI of Class Members;

    f.   Whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the PII and PHI compromised in the Data Breach;

    g.   Whether implied or express contracts existed between Defendant, on the one hand, and Plaintiff and Class Members on the other;

    h.   Whether Defendant adequately, promptly, and accurately informed Plaintiff and Class Members that their PII and PHI had been compromised;

    i.   Whether Plaintiff and Class Members are entitled to actual, damages, statutory damages, and/or punitive damages because of Defendant's wrongful conduct;

    a.   Whether Plaintiff and Class Members are entitled to restitution because of Defendant's wrongful conduct;

    b.   Whether Plaintiff and Class Members are entitled to injunctive relief to redress the imminent and ongoing harm they face because of the Data Breach; and

    c.   Whether Plaintiff and Class Members are entitled to identity theft protection for their respective lifetimes.

78.    **Typicality:** Plaintiff's claims are typical of those of other Class Members because Plaintiff's PHI, like that of every other Class Member, was disclosed by Defendant. Plaintiff's claims are typical of those of the other Class Members because, *inter alia*, all Class Members were injured through Defendant's common misconduct. Plaintiff is advancing the same claims

and legal theories on behalf of herself and all other Class Members, and there are no defenses that are unique to Plaintiff. Plaintiff's claims and Class Members' claims arise from the same operative facts and are based on the same legal theories.

79.    **Adequacy:** Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class. Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in data breach litigation. Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the Class's interests.

80.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply to and affect Class Members uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

81.    **Superiority:** Class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged herein; it will permit a large number of Class Members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually

afford to litigate a complex claim against large corporations, like Defendant. Even for those Class Members who could afford to litigate such a claim, it would still be economically impractical and impose a burden on the courts.

82.     The nature of this action and the nature of laws available to Plaintiff and Class Members make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and Class Members for the wrongs alleged because Defendant would necessarily gain an unconscionable advantage since Defendant would be able to exploit and overwhelm the limited resources of each individual Class Member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff were exposed is representative of that experienced by Class Members and will establish the right of each Class Member to recover on the cause of action alleged; and individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

83.     The litigation of Plaintiff's claims is manageable. Defendant's uniform conduct, the consistent provisions of the relevant laws, and the ascertainable identities of Class Members demonstrate that there would be no significant manageability problems with prosecuting this lawsuit as a class action.

84.     Adequate notice can be given to Class Members directly using information maintained in Defendant's records.

85.     Unless a class-wide injunction is issued, Defendant may continue to maintain inadequate security with respect to the PII and PHI of Class Members, Defendant may continue to refuse to provide proper notification to Class Members regarding the Data Breach, and Defendant may continue to act unlawfully as set forth in this Complaint.

**COUNT I**
**NEGLIGENCE**

86.    Plaintiff re-alleges and incorporates by reference herein all of the allegations

contained in the preceding paragraphs.

87.    As a condition of their utilizing Defendant's services, patients were obligated to

provide Defendant with certain PII and PHI, including their dates of birth, Social Security

numbers, personal medical information, and other PHI.

88.    Plaintiff and the Class Members entrusted their PII and PHI to Defendant on the

premise and with the understanding that Defendant would safeguard their information and not

disclose that information to unauthorized third parties.

89.    Defendant has full knowledge of the sensitivity of PII and PHI and the types of

harm that Plaintiff and Class Members could and would suffer if PII and PHI were wrongfully

disclosed.

90.    Defendant knew or reasonably should have known that the failure to exercise due

care in the collection, storage, and use of patients' PII and PHI involved an unreasonable risk of

harm to Plaintiff and Class Members.

91.    Defendant had a duty to exercise reasonable care in safeguarding, securing, and

protecting Plaintiff's and Class Members' PII and PHI from being compromised, lost, stolen,

misused, and/or disclosed to unauthorized parties. This duty includes, among other things,

designing, maintaining, and testing Defendant's security protocols to ensure that Plaintiff's and

Class Members' information in Defendant's possession was adequately secured and protected,

and that employees tasked with maintaining such information were adequately trained as to

proper measures regarding the security of patients' PII and PHI.

92.     Defendant had a duty to have procedures in place to detect and prevent the improper access and misuse of Plaintiff's and Class Members' PII and PHI.

93.     Additionally, violations of statutes which establish a duty to take precautions to protect a particular class of persons from a particular injury or type of injury may constitute negligence *per se.*

94.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect PII and PHI. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

95.     Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and Class Members' PII and PHI and failing to comply with relevant industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII and PHI it obtained and stored, and the foreseeable consequences of a data breach including, specifically, the damages that would result to Plaintiff and Class Members.

96.     Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se.*

97.     Plaintiff and Class Members are within the class of persons that the FTC Act was intended to protect.

98.     The harm that occurred because of the Data Breach is the type of harm the FTC Act was intended to guard against. The FTC has pursued enforcement actions against businesses, which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiff and Class Members.

99.     Defendant's violation of HIPAA also independently constitutes negligence *per se*.

100.    HIPAA privacy laws were enacted with the objective of protecting the confidentiality of patients' PHI and set forth the conditions under which such information can be used, and to whom it can be disclosed. HIPAA privacy laws not only apply to healthcare providers and the organizations they work for, but to any entity that may have access to PHI that—if it were to fall into the wrong hands—could present a risk of harm to a patient's finances or reputation.

101.    Plaintiff and Class Members are within the class of persons that HIPAA privacy laws were intended to protect.

102.    The harm that occurred because of the Data Breach is the type of harm HIPAA privacy laws were intended to guard against.

103.    A breach of security, unauthorized access, and resulting injury to Plaintiff and Class Members was reasonably foreseeable, particularly considering the growing number of data breaches of health care providers.

104.    Plaintiff and Class Members were the foreseeable and probable victims of any inadequate security practices and procedures. Defendant knew or should have known of the inherent risks in collecting and storing Plaintiff's and Class Members' PII and PHI, the importance of providing adequate security for that information, and that Defendant had inadequate employee training and education and information technology security protocols in place to secure Plaintiff's and Class Members' PII and PHI.

105.    Defendant's misconduct created a foreseeable risk of harm to Plaintiff and Class Members. Defendant's misconduct included, but was not limited to, its failure to take the steps necessary to prevent the Data Breach. Defendant's misconduct also included its decisions not to

comply with industry standards for the safekeeping and disclosure of Plaintiff's and Class Members' PII and PHI.

106.    Plaintiff and Class Members had no ability to protect their PII and PHI that was in Defendant's possession.

107.    Defendant was in a position to protect against the harm suffered by Plaintiff and Class Members because of the Data Breach.

108.    Defendant had and continues to have a duty to adequately disclose that Plaintiff's and Class Members' PII and PHI within Defendant's possession might have been compromised, how it was compromised, and precisely the types of information that were compromised and when. Such notice was necessary to allow Plaintiff and Class Members to take steps to prevent, mitigate, and repair any identity theft and the fraudulent use of their PHI by unauthorized parties.

109.    Defendant has admitted that Plaintiff's and Class Members' PII and PHI was wrongfully disclosed to unauthorized parties because of the Data Breach.

110.    Defendant, through its actions and/or omissions, unlawfully breached its duties to Plaintiff and Class Members by failing to implement industry protocols and exercise reasonable care in protecting and safeguarding Plaintiff's and Class Members' PII and PHI during the period in which that information was within Defendant's possession or control.

111.    Defendant improperly and inadequately safeguarded Plaintiff's and Class Members' PII and PHI in violation of standard industry rules, regulations, and practices at the time of the Data Breach.

112.    Defendant failed to heed industry warnings and alerts to provide adequate safeguards to protect patients' PII and PHI in the face of increased risk of theft.

113.    Defendant, through its actions and/or omissions, unlawfully breached its duty to Plaintiff and Class Members by failing to have appropriate procedures in place to detect and prevent dissemination of its patients' PII and PHI.

114.    Defendant, through its actions and/or omissions, unlawfully breached its duty to adequately and timely disclose to Plaintiff and Class Members the existence and scope of the Data Breach.

115.    But for Defendant's wrongful and negligent breach of duties owed to Plaintiff and Class Members, Plaintiff's and Class Members' PII and PHI would not have been compromised.

116.    There is a close causal connection between Defendant's failure to implement security measures to protect the PHI of current and former patients and the harm suffered or risk of imminent harm suffered by Plaintiff and Class Members. Unauthorized parties gained access to Plaintiff's and Class Members' PII and PHI as the proximate result of Defendant's failure to exercise reasonable care in safeguarding that information by adopting, implementing, and maintaining appropriate security measures.

117.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with the effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit

reports; (vii) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect that information; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the Data Breach for the remainder of the lives of Plaintiff and Class Members; and (ix) the diminished value of Defendant's services Plaintiff and Class Members received.

118.    As a direct and proximate result of Defendant's negligence, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT II**
**BREACH OF CONTRACT**

119.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs .

120.    As a healthcare provider, Defendant entered into contracts with Plaintiff and Class Members.

121.    The promises and representations described above relating to HIPAA and other industry practices, and about Defendant's purported concern about its patients' privacy rights became terms of the contract between Defendant and its patients, including Plaintiff and Class Members.

122.    Defendant breached these promises by failing to comply with HIPAA and other reasonable industry practices.

123.    Plaintiff and Class Members fully performed their obligations under the contracts with Defendant. Defendant breached its agreements with Plaintiff and Class Members by failing

to protect their PHI. Specifically, Defendant: (1) failed to take reasonable steps to use safe and secure systems to protect PHI; (2) failed to have appropriate security protocols and measures in place; (3) allowed unauthorized third parties to gain access to patients' PHI; and (4) failed to promptly alert or give notice of the Data Breach to Plaintiff and Class Members.

124.    As a result of Defendant's breach of these terms, Plaintiff and Class Members have been harmed and put at risk of future harm.

125.    Plaintiff and Class Members are therefore entitled to damages, including restitution and unjust enrichment, disgorgement, declaratory and injunctive relief, and attorney fees, costs, and expenses.

**COUNT III**
**BREACH OF IMPLIED CONTRACT**

126.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs .

127.    Plaintiff and Class Members were required to provide their PII and PHI, including names, Social Security numbers, dates of birth, medical histories, and other personal information to Defendant as a condition of their use of Defendant's services.

128.    Plaintiff and Class Members paid money to Defendant in exchange for services, as well as Defendant's promises to protect PII and PHI from unauthorized disclosure.

129.    In its written privacy policy and other documents, Defendant expressly promised Plaintiff and Class Members that Defendant would only disclose PII and PHI under certain circumstances, none of which account for the Data Breach.

130.    Defendant promised to comply with HIPAA standards and to make sure that Plaintiff's and Class Members' PHI would remain protected.

131.    Implicit in the agreement between Defendant's patients, including Plaintiff and Class Members, to provide PII and PHI, and Defendant's acceptance of such information, was Defendant's obligation to take reasonable steps to secure and safeguard that information, and not disclose it to unauthorized third parties.

132.    Also implicit in the agreement was Defendant's obligation to provide Plaintiff and Class Members with prompt and sufficient notice of all unauthorized access and/or theft of their PII and PHI.

133.    Without such implied contracts, Plaintiff and Class Members would not have provided Defendant with their PII and PHI.

134.    Defendant had an implied duty to reasonably safeguard and protect Plaintiff's and Class Members' PII and PHI from unauthorized disclosure or uses.

135.    Defendant also implicitly promised to retain this PII and PHI only under conditions that kept such information secure and confidential.

136.    Plaintiff and Class Members fully performed their obligations under the implied contract with Defendant; however, Defendant did not.

137.    Defendant breached the implied contracts with Plaintiff and Class Members by failing to reasonably safeguard and protect Plaintiff and Class Members' PII and PHI, which was compromised because of the Data Breach. Defendant further breached the implied contracts with Plaintiff and Class Members in at least the following ways:

    a.  by failing to comply with its promise to abide by HIPAA;

    b.  by failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted in violation of 45 CFR 164.306(a)(1);

c.  by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI so as to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1);

d.  by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1);

e.  by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that were known to it, in violation of 45 CFR 164.308(a)(6)(ii);

f.  by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR 164.306(a)(2);

g.  by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

h.  by improperly using and disclosing PHI that remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq*.;

i.  by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard PHI in compliance with 45 CFR 164.530(c); and

j.  by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

138.    Because Defendant allowed unauthorized access to Plaintiff's and Class Members' PHI and failed to safeguard the PHI, Defendant breached its contracts with Plaintiff and Class Members.

139.     A meeting of the minds occurred, as Plaintiff and Class Members agreed, *inter alia*, to provide accurate and complete PII and PHI and to pay Defendant in exchange for Defendant's agreement to protect that information.

140.     Defendant breached its contracts by not meeting the minimum level of protection for Plaintiff's and Class Members' PII and PHI, because Defendant did not prevent the breach of over 190,000 patients' PHI.

141.     Furthermore, its failure to meet its confidentiality and privacy obligations resulted in Defendant providing services to Plaintiff and Class Members that were of a diminished value.

142.     As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect that information; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the

remainder of Plaintiff's and Class Members' lives; and (ix) the diminished value of Defendant's services they received.

143.    As a direct and proximate result of Defendant's breach of its implied contracts with Plaintiff and Class Members, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY**

144.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

145.    In light of the special relationship between Defendant and its patients, whereby Defendant became guardian of Plaintiff's and Class Members' highly sensitive, confidential, personal, financial information, and other PII and PHI, Defendant was a fiduciary required to act primarily for the benefit of its patients, including Plaintiff and Class Members, with respect to: (1) the safeguarding of Plaintiff's and Class Members' PII and PHI; (2) timely notifying Plaintiff and Class Members of a data breach or disclosure; and (3) maintaining complete and accurate records of what and where Defendant's patients' information was and is stored.

146.    Defendant had a fiduciary duty to act for the benefit of Plaintiff and Class Members upon matters within the scope of their patient relationships, in particular to keep secure its patients' PHI and PII.

147.    Defendant breached its fiduciary duties to Plaintiff and Class Members in at least the following ways:

   a.    by failing to diligently investigate the Data Breach to determine the number of Members affected in a reasonable and practicable period;

36

b.  by failing to protect Plaintiff's and Class Members' PII and PHI;

c.  by failing to timely notify and/or warn Plaintiff and Class Members of the Data Breach;

d.  by failing to ensure the confidentiality and integrity of electronic PHI Defendant created, received, maintained, and transmitted, in violation of 45 CFR 164.306(a)(1);

e.  by failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR 164.312(a)(1);

f.  by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR 164.308(a)(1);

g.  by failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.  by failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR 164.306(a)(2);

i.  by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j.  by failing to ensure compliance with the HIPAA security standard rules by its workforce in violation of 45 CFR 164.306(a)(94);

    k.   by impermissibly and improperly using and disclosing PHI that remains accessible to unauthorized persons in violation of 45 CFR 164.502, *et seq.*; and

    l.   by otherwise failing to safeguard Plaintiff's and Class Members' PHI.

148.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will suffer injury, including but not limited to: (i) actual identity theft; (ii) the loss of the opportunity to control how their PII and PHI is used; (iii) the compromise, publication, and/or theft of their PII and PHI; (iv) out-of-pocket expenses associated with the prevention, detection, and recovery from identity theft, tax fraud, and/or unauthorized use of their PII and PHI; (v) lost opportunity costs associated with effort expended addressing and attempting to mitigate the actual and future consequences of the Data Breach, including but not limited to efforts spent researching how to prevent, detect, contest, and recover from tax fraud and identity theft; (vi) costs associated with placing freezes on credit reports; (vii) the continued risk to their PII and PHI, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect that information; (viii) future costs in terms of time, effort, and money that will be expended to prevent, detect, contest, and repair the impact of the PII and PHI compromised as a result of the Data Breach for the remainder of Plaintiff's and Class Members' lives; and (ix) the diminished value of Defendant's services they received.

149.   As a direct and proximate result of Defendant's breaches of its fiduciary duties, Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy, and other economic and non-economic losses.

**COUNT V**
**MASSACHUSETTS CONSUMER PROTECTION ACT,**
**Mass. Gen. Laws Ann. Ch. 93A, §§ 1, *et seq*.**

150.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

151.    Plaintiff intends to assert a claim under G.L. c. 93A, which makes it unlawful to engage in any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." G.L. c. 93A, § 2(a). Plaintiff is making a demand in satisfaction of G.L. c. 93A, § 9(3), and will amend this Complaint to assert claims under Chapter 93A after the required 30 days have elapsed. This paragraph and this Count are included for purposes of notice only, and are not intended to assert a claim under Chapter 93A.

152.    Defendant, Plaintiff, and the Massachusetts Subclass members are "persons" as meant by G.L. c. 93A, § 1(a).

153.    Defendant operates in "trade or commerce" as meant by G.L. c. 93A, § 1(b).

154.    Defendant advertised, offered, or sold services in Massachusetts and engaged in trade or commerce directly or indirectly affecting the people of Massachusetts, as defined by G.L. c. 93A, § 1(b).

155.    Defendant engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of trade or commerce, in violation of G.L. c. 93A, § 2(a), including:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff and Massachusetts Subclass members' PII and PHI, which was a direct and proximate cause of the Data Breach;

    b.    Failing to identify foreseeable security and privacy risks, and remediate identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

c.  Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Massachusetts Subclass members' PII and PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and the Massachusetts Data Security statute and its implementing regulations, G.L. c. 93H, § 2; 201 Mass. Code Regs. 17.01-05, which was a direct and proximate cause of the Data Breach;

d.  Misrepresenting that it would protect the privacy and confidentiality of Plaintiff and Massachusetts Subclass members' PII and PHI, including by implementing and maintaining reasonable security measures;

e.  Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Massachusetts Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and the Massachusetts Data Security statute and its implementing regulations, G.L. c. 93H, § 2; 201 Mass. Code Regs. 17.01-05;

f.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff and Massachusetts Subclass members' Personal Information; and

g.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff and Massachusetts Subclass members' Personal Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, and the Massachusetts Data Security statute and its implementing regulations, G.L. c. 93H, § 2; 201 Mass. Code Regs. 17.01-05.

156.    Defendant's acts and practices were "unfair" because they fall within the penumbra of common law, statutory, and established concepts of unfairness, given that Defendant solely held the true facts about its inadequate date security, which Plaintiff and the Massachusetts Subclass members could not have independently discovered.

157.    Consumers could not have reasonably avoided injury because Defendant's business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendant created an asymmetry of information between it and consumers that precluded consumers from taking action to avoid or mitigate injury.

158.    Defendant's inadequate data security had no countervailing benefit to consumers or to competition.

159.    Defendant intended to mislead Plaintiff and Massachusetts Subclass members and induce them to rely on its misrepresentations and omissions. Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of its data security and ability to protect the confidentiality of consumers' PII and PHI.

160.    Defendant acted intentionally, knowingly, and maliciously to violate Massachusetts's Consumer Protection Act, and recklessly disregarded Plaintiff's and Massachusetts Subclass members' rights. Breaches within the healthcare industry put Defendant on notice that its security and privacy protections were inadequate.

161.    As a direct and proximate result of Defendant's unfair and deceptive acts and practices, Plaintiff and Massachusetts Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary

damages, including losses from fraud and identity theft; costs for credit monitoring and identity protection services; time and expenses related to monitoring their financial accounts for fraudulent activity; loss of value of their PII and PHI; and an increased, imminent risk of fraud and identity theft.

162.    Plaintiff and Massachusetts Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, double or treble damages, restitution; injunctive or other equitable relief, and attorneys' fees and costs.

**COUNT VI**
**INJUNCTIVE/DECLARATORY RELIEF**

163.    Plaintiff re-alleges and incorporates by reference herein all of the allegations contained in the preceding paragraphs.

164.    As previously alleged, Plaintiff and Class Members entered into a contract that required Defendant to provide adequate security for the PHI and PII it collected from Plaintiff and Class Members.

165.    Defendant owes a duty of care to Plaintiff and Class Members requiring it to adequately secure PII and PHI.

166.    Defendant still stores Plaintiff's and Class Members' PII and PHI.

167.    Since the Data Breach, Defendant has announced no specific changes to its data security infrastructure, processes, or procedures to fix the vulnerabilities in its computer systems and/or security practices which permitted the Data Breach to occur and, thereby, prevent similar incidents from occurring in the future.

168.    Defendant has not satisfied its contractual obligations and legal duties to Plaintiff and Class Members.

169.    Actual harm has arisen in the wake of the Data Breach regarding Defendant's contractual obligations and duties of care to provide security measures to Plaintiff and Class Members. Further, Plaintiff and Class Members are at risk of additional or further harm due to the exposure of their PII and PHI, and Defendant's failure to address the security failings that led to that exposure.

170.    Plaintiff, therefore, seeks a declaration: (a) that Defendant's existing security measures do not comply with its contractual obligations and duties of care to provide adequate security; and (b) that to comply with its contractual obligations and duties of care, Defendant must implement and maintain reasonable security measures, including, but not limited to, the following:

    a.   ordering that Defendant engage third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

    b.   ordering that Defendant engage third-party security auditors and internal personnel to run automated security monitoring;

    c.   ordering that Defendant audit, test, and train its security personnel regarding any new or modified procedures;

    d.   ordering that Defendant segment patient data by, among other things, creating firewalls and access controls so that if one area of Defendant's system is compromised, hackers cannot gain access to other portions of Defendant's systems;

e.  ordering that Defendant purge, delete, and destroy in a reasonably secure manner patient data not necessary for its provision of services;

f.  ordering that Defendant conduct regular computer system scanning and security checks;

g.  ordering that Defendant routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

h.  ordering Defendant to meaningfully educate its current, former, and prospective patients about the threats they face because of the loss of their PHI to third parties, as well as the steps they must take to protect themselves.

## PRAYER FOR RELIEF

WHEREFORE Plaintiff, individually and on behalf of all others similarly situated, prays for relief as follows:

a.  for an Order certifying the Class as defined herein, and appointing Plaintiff and her counsel to represent the Class;

b.  for equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class Members' PHI, and from refusing to issue prompt, complete, and accurate disclosures to Plaintiff and Class Members;

c.  for equitable relief compelling Defendant to use appropriate cyber security methods and policies with respect to PHI collection, storage, and protection, and to disclose with specificity to Class Members the type of PHI compromised;

d.   for an award of damages, including actual, nominal, consequential, enhanced

compensatory, and punitive damages, as allowed by law in an amount to be

determined;

e.   for an award of attorneys' fees, costs, and litigation expenses, as allowed by law;

f.   for prejudgment interest on all amounts awarded; and

g.   such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: September 2, 2022                    Respectfully submitted,

/s/ Benjamin P. Lajoie
Benjamin P. Lajoie
**BAILEY GLASSER LLP**
Attorney Bar No. 021286
blajoie@baileyglasser.com
176 Federal Street, 5th Floor
Boston, MA 02110
617.439.6730

**BAILEY GLASSER LLP**
Bart D. Cohen (*pro hac vice* forthcoming)
1622 Locust Street
Philadelphia, PA  19103
215.274.9420
bcohen@baileyglasser.com

**LAW OFFICES OF JENNIFER DUFFY, APC**
Jennifer Duffy (*pro hac vice* forthcoming)
28649 S. Western Avenue, Suite 6571
Los Angeles, CA 90734
310-714-9779
jennifer@usclassactions.com

*Attorneys for Plaintiff and the Proposed Classes*